BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP
DAVID S. CASEY, JR. (60768)
FREDERICK SCHENK (86392)
GAYLE BLATT (122048)
110 Laurel Street
San Diego, CA 92101
Telephone: 619/238-1811
619/544-9232 (fax)
dcasey@cglaw.com
fschenk@cglaw.com
gblatt@cglaw.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HENRY GARCIA, On Behalf of Himself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>SONY COMPUTER ENTERTAINMENT AMERICA, LLC,<br><br>Defendant. | Case No.: 3:11-cv-02246-RS<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>Date: September 15, 2011<br>Time: 1:30 p.m.<br><br>Judge: Richard Seeborg<br>Courtroom: 3, 17th Floor<br>Date Filed: May 6, 2011<br>Trial Date: TBD |

BLOOD HURST & O'REARDON, LLP

TABLE OF CONTENTS

Page

I. Introduction ........ 1

II. Statement of the Case ........ 2

III. Motion to Dismiss Standards ........ 4

IV. Sony's Conduct is Actionable ........ 4

A. *Daugherty* and the "Post-Warranty" Case Law are Inapplicable ........ 4

B. Sony's Affirmative Misrepresentations are Actionable ........ 7

V. Plaintiff Adequately Pleads Reliance ........ 10

VI. Rule 9 Does not Apply, but is Satisfied Nonetheless ........ 12

A. Rule 9 Does Not Apply ........ 12

VII. Plaintiff has Stated a UCL Claim ........ 13

A. Plaintiff Has Standing Under the UCL ........ 13

B. Actionable Basis for UCL Claim ........ 14

VIII. Sony's Class Certification Arguments are Premature ........ 16

IX. Conclusion ........ 18

BLOOD HURST & O'REARDON, LLP

TABLE OF AUTHORITIES

**Cases** **Page**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................4

*Baggett v. Hewlett-Packard Company*, 582 F.Supp.2d 1261 (C.D. Cal. 2007)....................7

*Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 13187 (N.D. Cal. Feb. 10, 2011) ...........12

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ....................4

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001)....................13

*Chacanaca v. Quaker Oats Co.*, No. 10-0502, 2010 U.S. Dist. LEXIS 111981 (N.D. Cal. Oct. 14, 2010)....................13

*Cholakyan v. Mercedes-Benz USA, LLC*, No. CV 10-05944 MMM (JCx), 2011 U.S. Dist. LEXIS 72584 (C.D. Cal. June 30, 2011) ....................16

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963 (1992)....................15

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997)....................13

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) ....................9, 15

*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006).................... passim

*Day v. AT&T Corp.*, 63 Cal. App. 325 (1998)....................12

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003)....................4

*Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088 (N.D. Cal. 2007) ....................9

*Fireside Bank v. Superior Court*, 40 Cal. 4th 1069 (2007) ....................17

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997)....................4

BLOOD HURST & O'REARDON, LLP

*Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007) ....................5, 6

*In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 U.S. Dist. LEXIS 43592 (S.D. Cal. May 22, 2009) ....................16

*In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 U.S. Dist. LEXIS 108500 (N.D Cal Nov. 19, 2009) ..........16

*In re Steroid Home Prod. Cases*, No. B211968, 2010 Cal. App. LEXIS 154 (Ct. App. Feb. 8, 2010) ....................17

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .................... passim

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007) ....................16

*Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003) ....................14

*Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 U.S. Dist. LEXIS 89379 (N.D. Cal. Aug. 10, 2011)....10

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ....................7, 11, 13, 14

*Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496 (2003)....................16

*Lima v. Gateway, Inc.*, 710 F.Supp.2d 1000 (C.D. Cal. 2010)....................8

*Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007)....................14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)....................11

*Mass Mut. Life Ins. v. Superior Court*, 97 Cal. App. 4th 1282 (2002)....................11

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006)....................15, 16

*Mlejnecky v. Olympus Imaging America Inc.*, No. 2:10-CV-02630 JAM, 2011 U.S. Dist. LEXIS 42333 (E.D. Cal. Apr. 19, 2011).....8

*Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211 BZ, 2009 U.S. Dist. LEXIS 57528 (N.D. Cal. July 7, 2009).....5, 6, 7, 10

*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal App. 4th 1235 (2009)....................7, 8, 11

*Olivera v. Am. Home Mortgage Servicing, Inc.*, 689 F. Supp. 2d 1218 (N.D. Cal. 2010) ....17

*Ostreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008) ....5

*Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 37 (1975)....7

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998)....4

*People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508 (2002)....15

*RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556 (C.D. Cal. 2005)....4

Sanders *v. Apple, Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009) ....17

*Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873 (6th Cir. 2006)....12

*Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144 (2000)....14

*Shein v. Canon U.S.A., Inc.*, No. CV-08-07323CASEX, 2009 U.S. Dist. LEXIS 94109 (C.D. Cal. Sept. 22, 2009) ....17

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996)....4

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)....4

*Trew v. Volvo Cars of N. Am.*, 2006 U.S. Dist. LEXIS 4890 (2006) ....12

*Vazquez v. Superior Court*, 4 Cal. 3d 800 (1971) ....11

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....2, 17

*Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009) ....11

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)....14

Case3:11-cv-02246-RS Document29 Filed08/22/11 Page6 of 25

**Statutes**

Cal. Civ. Code §1782 ....23

Fed.R.Civ.P. 12(b)(6) ....4

Fed.R.Civ.P. 15(a) ....5

Bus. & Prof. Code §17204 ....17

BLOOD HURST & O'REARDON, LLP

v Case No. 3:11-cv-0 2246-RS
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Henry Garcia respectfully submits his memorandum in opposition to defendant Sony Computer Entertainment America, LLC's ("Sony") motion to dismiss.

## I. INTRODUCTION

Sony's motion to dismiss is based entirely on the premise that product defect claims about its gaming console that are made outside the warranty period are barred. Whether or not this is a correct statement of the law, it has nothing to do with this case. Plaintiff does not allege that Sony's gaming console is defective. Instead, Sony licenses and authorizes and approves games for its PlayStation 3 gaming consoles ("PS3 consoles") that are not compatible with the particular PS3 consoles at issue, known as PS3 "fat" consoles. These PS3 games require more computing power than these older PS3 consoles can handle, resulting in overheating and, in turn, permanent failure of the PS3 consoles. Sony has been fully aware of this, which is why it now sells a different version of the PS3 console. Yet, because game sales, rather than console sales, is where Sony makes its profit, it continues to expressly represents that these games are for use with these PS3 consoles. Sony does not so much as warn its customers that using these games in the "fat" PS3 consoles can permanently damage the consoles. Sony's deceptive and unfair business practices violate California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA").

Despite extensive discussions with Sony's counsel about the theory of the case, including about the fact that it is not about the PS3 consoles simply breaking due to a defect, but about the consoles being broken by Sony's PS3 games, Sony nonetheless insists on this make-work exercise of challenging a PS3 console breach of express warranty case that has not been alleged. Sony's reliance on *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006), and subsequent cases misses the mark. Those cases are about warranty-based claims for product defects that manifest over time without any additional conduct by defendant. Here, plaintiff's UCL and CLRA claims have nothing to do with the Sony's PS3 console warranty. Instead, this lawsuit is about Sony's subsequent conduct of selling games that damage the consoles. There is nothing *per se* wrong with the consoles. They just cannot

play Sony's newer games without the risk of damage. Nonetheless, Sony licenses, authorizes and approves these games expressly for the subject PS3 consoles, and expressly states that these games are appropriate for use in these consoles.

Sony also makes inapposite arguments about the propriety of class certification. The arguments are incorrect because they concern allegations that are not made and, even if they were, the class certification arguments would be premature. Once the parties have conducted discovery and plaintiff has moved for class certification, Sony may make such arguments (presumably by then it will address the claims actually asserted). However, at this stage, the Court cannot conduct the "rigorous analysis" it is required to conduct for class certification until plaintiff has had an opportunity to provide it with a complete record. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (affirming trial court's obligation to conduct a rigorous analysis of class certification).[1] As will be shown with evidence at the appropriate time, Sony's class certification arguments fail because the challenged conduct that gives rise to liability is that of Sony's, and not the consumers'. It is Sony that licenses, authorizes and approves PS3 games that destroy the subject PS3 consoles. Consumers merely do what Sony expressly states they can do – purchase these games for use in these consoles.

For these reasons, Sony's motion to dismiss should be denied.

## II. STATEMENT OF THE CASE

Sony markets and sells a variety of consumer electronics products, including home videogame systems. ¶12.[2] In November 2006, Sony began selling the first generation PS3 videogame system, commonly referred to as the "fat" PS3 due to its size compared to the newer PS3 models. ¶¶1, 14-15. Retail price for the videogame system ranged from $250 to $600. ¶15. Sony has sold millions of PS3 systems worldwide. ¶12.

Only games that contain Sony's proprietary software can be played on the PS3 console. Sony develops this software and licenses it to video game developers to create games for

[1] Internal citations are omitted and emphasis in the original unless otherwise stated.
[2] All "¶" and "¶¶" references are to the First Amended Class Action Complaint ("FAC") filed on July 21, 2011, Dk. No. 21.

Sony's PS3 systems. ¶¶2, 17. Once the game is near its final version, Sony tests the game and gives a final stamp of approval for use on PS3 consoles. ¶17. Sony represents to consumers that certain games are appropriate for use on PS3s by stating in large letters on the outside packaging of the games, "PS3". ¶18. Sony also represents on its website that certain games are appropriate for use with PS3 consoles and provides pictures and other information about the games. ¶19. Additionally, the PS3 console packaging states that PS3 consoles can only play Sony-approved PS3 software, including Sony-approved games. ¶20. The licensing and sale of games for the PS3 system is one of Sony's largest sources of revenue. ¶¶ 6, 30, 31. In fact, Sony reportedly sold PS3 consoles at a loss because it knew it could more than recoup the money in games sales and licensing. ¶31.

The problem is that not all Sony-approved games are appropriate for use on all PS3 consoles. ¶21. New games such as the popular "Call of Duty" series cause the consoles to overheat and become permanently inoperable. ¶¶4, 21, 21. These newer games require computing power that the older PS3 "fat" consoles cannot support. ¶6. Sony is well aware that the PS3s cannot play all Sony-approved PS3 video games, yet chooses to turn a profit at consumers' expense. ¶¶5, 23-30. Instead of informing consumers that certain PS3 video games can only be used with newer versions of the PS3, Sony continues to engage in deceptive and misleading business practices by licensing and approving video games for use on the PS3s, and representing that the Sony-approved games are appropriate for use on all PS3 consoles. ¶¶23, 30.

But Sony's conduct doesn't stop there. Sony also offers to repair the consoles once its games break them – for a fee ranging from $99 to $150 plus tax. Sony does not actually fix the problem, but instead merely sends the consumer a refurbished console that still is unable to play these games. ¶26. Sony also keeps the game that broke the console, which becomes stuck inside the console when it breaks.

The videogame system market is highly competitive, and there is a constant demand for improved games. ¶6. Sony is well-aware of this. As increasingly sophisticated games are

developed and licensed by Sony and Sony's competitors, Sony choses to approve games that only should be approved for the newer PS3 consoles. *Id.* It does this so that it does not lose out on the highly lucrative game sales or worse, cause Sony PS3 customers to change to a competitor's gaming platform. *Id.*

As a result, Sony has realized an increase in sales and operating income in its gaming business, while plaintiff's and Class members' PS3 systems have been destroyed. ¶¶7, 30.

## III. MOTION TO DISMISS STANDARDS

Under Fed.R.Civ.P. 12(b)(6), "[a]ll allegations of material facts are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996); *see also Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A motion to dismiss for failure to state a claim "is generally viewed with disfavor and is rarely granted." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 560 (C.D. Cal. 2005) (citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)). If a complaint contains well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). The FAC easily meets this standard.

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed.R.Civ.P. 15(a); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (the policy in favor of permitting amendment is to be applied with "extreme liberality").

## IV. SONY'S CONDUCT IS ACTIONABLE

### A. *Daugherty* and the "Post-Warranty" Case Law Are Inapplicable

Sony ignores plaintiff's allegations, creates its own version of the facts, and then relies exclusively on inapplicable "post-warranty" case law as support for the contention that "the only reasonable expectation a consumer could have about the PS3 was that it would function

properly (including playing PS3 format software) for one year." Def's Mem. at 14.[3] Sony attacks allegations that simply do not exist. Instead, plaintiff alleges that consumers have a reasonable expectation that PS3 games expressly approved by Sony for use on its PS3 consoles were actually appropriate for that use, and would not destroy those consoles.

The unifying theme of *Daugherty* and all post-warranty cases is that plaintiffs alleged the defendant failed to disclose a latent product defect present at the time of sale. *Daugherty*, 144 Cal. App. 4th at 827 (alleging defect in cars); *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1101 (N.D. Cal. 2007) (alleging defect in computer); *Ostreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 966 (N.D. Cal. 2008) (same); *Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211 BZ, 2009 U.S. Dist. LEXIS 57528, at *1-*2 (N.D. Cal. July 7, 2009) (alleging defect in videogame drum pedal). In *Daugherty*, plaintiff alleged an automobile manufacturer breached its express warranties and violated federal and state consumer protection laws by failing to disclose an engine defect that manifested long after the warranty period. 144 Cal. App. 4th at 827. The court held that these warranty-based claims, grounded solely on the fact that the car engine eventually stopped working, were not actionable. *Id.* at 830-832. With respect to plaintiff's UCL and CLRA claims, the court found that absent an affirmative misrepresentation to the contrary, defendant's failure to disclose the defect was not actionable. *Id.* at 834, 837. The court indicated that to hold otherwise would render a product's finite life span a "defect," and would charge the manufacturer with insuring its products never failed. *Id.* at 839.

*Hoey*, on which Sony heavily relies (*see* Def's Mem. at 10-12), was based on similar facts as *Daugherty* and followed that court's holding. In *Hoey*, plaintiffs alleged Sony concealed a defect in its notebook computers that manifested after the warranty period. 515 F. Supp. 2d at 1101. Sony argued that the products lasted as long as warranted and any failure after the warranty period was not actionable absent some affirmative misrepresentation by

3 "Def's Mem." refers to Defendant's Notice of Motion and Motion to Dismiss First Amended Complaint; Memorandum of Points and Authorities, filed on August 8, 2011, Dk. No. 23.

Sony. *Id.* at 1103-1104. Not surprisingly, the court, following *Daugherty*, agreed and dismissed plaintiffs' claims. *Id.* at 1104-1105. Like in *Daugherty*, the court in *Hoey* held that "plaintiffs must allege more than the existence of a warranty and a defect occurring outside the warranty period to survive Sony's motion to dismiss." *Id.* at 1105.

That is exactly what plaintiff does here. Plaintiff does not make claims derived from her warranty rights or allege that a defect in the PS3 manifested after the warranty period to make the product inoperable. Nor does plaintiff allege that the PS3 just stopped working. Rather, plaintiff alleges that use of Sony-authorized and approved games can break the very game consoles for which Sony states they are intended to be used. ¶¶18-24. This conduct is actionable.

For example, in *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1256-57 (2009), plaintiffs alleged that AT&T sold an expensive line of cell phones in part by advertising the phones' world-wide calling capabilities and other advanced features. *Id.* at 1241. Like most phones sold by wireless providers, the phones would only operate on AT&T's proprietary networks. After plaintiffs purchased the phones, AT&T made substantial changes to its wireless network that rendered the phones unable to operate as advertised. *Id.* Plaintiffs alleged that AT&T knew that the network changes would have this result. *Id.* at 1256. The court held that these allegations were sufficient to state claims under the UCL and CLRA. *Id.* at 1256, 1260. Importantly, the court rejected the same argument Sony makes here – that a "consumer would not have been deceived by AT&T's alleged conduct because [a] consumer who buys a phone under a warranty and one- or two-year contract can reasonably expect only that his phone will last for the duration of the warranty and his service for the duration of the contract." *Id.* at 1256; Def's Mem. at 14 ("[T]the only reasonable expectation a consumer could have about the PS3 was that it would function properly (including playing PS3 format software) for one year."). The court found that whether a reasonable consumer

would be deceived was a matter of fact, was not appropriate for decision on a motion to dismiss.[4] *Morgan*, 177 Cal. App. 4th at 1256.

Similarly here, plaintiff purchased a PS3 console and Sony-approved PS3 games, but use of those games rendered the console permanently inoperable. Despite Sony's claims that the PS3 console was intended for use only with PS3 games, and PS3 games were appropriate for use on PS3 consoles, plaintiff purchased and used a PS3 game on his PS3 console and it rendered the console completely inoperable. Sony knew that not all games could be played on the PS3 consoles but did not inform plaintiff or other consumers of this fact. Instead, it represented the opposite.

Accordingly, plaintiff's claims are actionable under the UCL and CLRA and not subject to *Daugherty*.

**B. Sony's Affirmative Misrepresentations Are Actionable**

The *Daugherty* rule does not apply where affirmative misrepresentations outside the express warranty are alleged, even if a product defect is at issue.[5] That is, *Daugherty* does not shield one from false advertising and misbranding. Indeed, actions based on product representations are nothing new. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011) ("Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source."); *see also Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 37 (1975) (misrepresentation about vehicle's handling abilities).

In *Baggett v. Hewlett-Packard Company*, 582 F.Supp.2d 1261 (C.D. Cal. 2007), defendant sold inkjet printers at a near-loss because it recouped the money in selling printer

---

4 While plaintiffs in *Morgan*, like plaintiff here, alleged AT&T's conduct violated the UCL under all three prongs (*i.e.*, the conduct was unfair, unlawful, and fraudulent), the court held that because plaintiffs alleged a fraudulent business practice under the UCL, it need not decide whether the conduct also met the unfair or unlawful definitions. 177 Cal. App. 4th at 1255.

5 In *Daugherty*, the only misrepresentations alleged were the express warranties as to which no breach occurred. 144 Cal. App. 4th at 835.

cartridges for the printers. Plaintiffs alleged HP printers would register HP-approved printer cartridges as empty long before they actually were. When this happened, a light would illuminate on the printer and it would stop working until the cartridge was replaced. *Id.* at 1264-1265. HP moved to dismiss the complaint, making many of the same arguments as Sony does here based on *Daugherty*. *Id.* at 1269. The court rejected the arguments, finding that plaintiffs had identified specific misrepresentations made by HP, *i.e.*, that the ink cartridges were empty when they were not. *Id.* at 1269.

The court in *Lima v. Gateway, Inc.*, 710 F.Supp.2d 1000 (C.D. Cal. 2010) reached a similar result. There, the court upheld UCL and CLRA claims based on defendant's misrepresentations concerning its computer monitors. *Id.* at 1004. Like this case, plaintiff in *Lima* alleged that Gateway made affirmative representations about its monitors that were either untrue or misleading. The court found that *Daugherty* was inapplicable because plaintiff's claims were not "derived from the product's warranty". *Lima* at 1005. Instead, plaintiff alleged UCL and CLRA claims based on defendant's representations about its monitors that were misleading or untrue. *Id.*

Likewise, in *Mlejnecky v. Olympus Imaging America Inc.*, No. 2:10-CV-02630 JAM, 2011 U.S. Dist. LEXIS 42333 (E.D. Cal. Apr. 19, 2011), plaintiff alleged defendant misrepresented the durability of its digital cameras. The court rejected Olympus' motion to dismiss the case based on the fact that the camera broke more than a year after the warranty expired. *Id.* at *7. The court held that plaintiff's complaint "asserts affirmative misrepresentation claims, not a post-warranty case." *Id.* According to the court, "[u]nlike the plaintiffs in *Daugherty*, the principle case upon which [Olympus] relies, Plaintiff is not alleging a breach of an express warranty or a violation of the Magnuson–Moss Warranty–

Federal Trade Commission Improvement Act." *Id.* Instead, the plaintiff pointed to actionable misrepresentations by the defendant.[6] *Id.* at *8-*9.

Sony contends that these cases are distinguishable because plaintiff here cannot point to a specific representation by Sony that is contrary to the PS3's performance. Def's Mem. at 13-14. Nonsense. Plaintiff has pleaded Sony's representations, even including photographs of the packaging for both the PS3 console and PS3 video games. ¶¶18-22. Sony represents on the packaging of the PS3 consoles, on its website, and on the PS3 video games that Sony-approved PS3 games can play on PS3 consoles. ¶18 ("Consumers are aware of which games are appropriate for use on their PS3 consoles because the Sony-approved video games contain the PS3 logo prominently displayed on the outside of the packaging."), ¶19 ("Sony further misrepresents to consumers through its website that these games are appropriate for use on the PS3. Through its website http://us.playstation.com, Sony markets the video games as suitable for use on the PS3 and provides consumers with pictures and other information about the games and direct links to websites for purchase of the games."), ¶20 ("Sony also expressly misrepresents to consumers on the packaging of the PS3 consoles that the consoles are compatible with all games that contain the PS3 software."). However, contrary to these representations, not all PS3 games that contain PS3 software can play as intended on PS3 consoles. ¶¶21, 22. In actuality, use of these games on the PS3 consoles renders the consoles inoperable. *Id.*

Sony also contends that absent Sony's knowledge of the "defect," its misrepresentations could not be misleading or deceptive. Def's Mem. at 15. First, it is Sony's conduct that destroyed the PS3 consoles. Intent is not required. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181 (2000) ("[P]laintiff need not show that a UCL

---

6 *See also In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 U.S. Dist. LEXIS 108500, *35 (N.D Cal Nov. 19, 2009) (rejecting *Daugherty* challenge to allegations that the manufacturers of computers and graphics processing units concealed defects in the GPUs that would result in display problems and system crashes); *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1094-97 (N.D. Cal. 2007) (finding dismissal not warranted in action alleging violations of the UCL and CLRA stemming from the failure to disclose concealed defects in vehicle speedometers that ultimately resulted in the speedometers ceasing to function properly).

defendant intended to injure anyone through its unfair or unlawful conduct."). Further, Plaintiff expressly alleges Sony knew that not all PS3 games were compatible with the PS3 consoles, but continued to market and sell them as compatible. ¶17 ("Sony creates the software that is used on the video games to make them compatible with PS3 consoles and licenses it to developers.... Once the game is developed and prior to sale to consumers, the developers submit the near final version to Sony for feedback and approval. Sony then formally approves the games as compatible...."), ¶27 ("Sony is acutely aware of the incompatibility...."), ¶28 ("On Sony's own 'PlayStation® Community' message board, several consumers have complained about the incompatibility...."). *See Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 U.S. Dist. LEXIS 89379, *4 (N.D. Cal. Aug. 10, 2011) (finding that allegations of defendant's testing of the product and consumer complaints were sufficient to raise the inference that defendant knew or should have known).

Plaintiff has alleged actionable conduct under the UCL and CLRA.

## V. PLAINTIFF ADEQUATELY PLEADS RELIANCE

Additionally, Sony contends plaintiff has not alleged reliance and "therefore lacks Article III standing" and his claims should be dismissed. Def's Mem. at 14. Sony is simply wrong on the law and facts. First, plaintiff need not "plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements" and need not "demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009); *see also Morgan*, 177 Cal. App. 4th at 1258 ("Plaintiffs were not required, as AT&T asserts, to plead the specific

advertisements or representations they relied upon in making their decision to purchase the [product].").[7]

Second, reliance is presumed under the UCL and CLRA where the misrepresentation or omission is material. *In re Tobacco II*, 46 Cal. 4th at 326-327 ("a presumption of reliance or at least an inference, of reliance arises whenever there is a showing that a misrepresentation is material"); *Mass Mut. Life Ins. v. Superior Court*, 97 Cal. App. 4th 1282, 1294-95 (2002); *Vazquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669-70 (C.D. Cal. 2009) (inference of reliance regarding misrepresentations made by Dannon about the health benefits of its yogurt products). The misrepresentation need not be the sole reason for the purchase, but merely a substantial factor. *Kwikset*, 51 Cal. 4th at 327; *In re Tobacco II*, 46 Cal. 4th at 326.

Plaintiff pleaded reliance under these standards. Plaintiff pleaded that he would not have purchased the PS3 had he known that it could not play all Sony-approved PS3 games. ¶11. Sony acknowledges this allegation. Def's Mem. at 7. And he obviously would not have bought games that he knew would break his console. These allegations are more than sufficient to establish reliance. *See In re Tobacco II*, 46 Cal. 4th at 327-28.

Finally, Article III merely requires "a causal connection between the injury and the conduct complained of." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Allegations that plaintiff would not have purchased the product, or would not have paid as much for the product, absent defendant's conduct are sufficient to satisfy Article III standing.

---

[7] Sony, does not bother to distinguish the various causation standards used for the different UCL prongs. Named plaintiff reliance is only required for UCL "fraudulent" prong claims. See *In re Tobacco II*, 46 Cal. 4th at 326 n.17 ("There are doubtless many types of unfair business practices in which the concept of reliance [] has no application."); *Fireside Bank v. Superior Court*, 40 Cal. 4th 1069, 1090 (2007) (applying a different causation standard to unlawful prong); *In re Steroid Home Prod. Cases*, No. B211968, 2010 Cal. App. LEXIS 154, at *3 (Ct. App. Feb. 8, 2010) ("where the UCL claim is based upon the unlawful prong of the UCL" there is "no issue regarding reliance"); *Olivera v. Am. Home Mortgage Servicing, Inc.*, 689 F. Supp. 2d 1218, 1224 (N.D. Cal. 2010) ("For claims based on the 'unfair' or 'unlawful' prong of the UCL claim, courts have held that the plaintiff ... may allege 'causation more generally.'"). Plaintiff also alleges violations of the "unfair" and "unlawful" prongs of the UCL. *See* ¶¶44, 46.

*See Trew v. Volvo Cars of N. Am.*, 2006 U.S. Dist. LEXIS 4890, at *18-*19 (2006).[8] Plaintiff does just that – he alleges he would not have purchased the PS3 had he known that it would not play all Sony-approved PS3 games. ¶11. Accordingly, plaintiff satisfies statutory and Article III standing.

## VI. RULE 9 DOES NOT APPLY, BUT IS SATISFIED NONETHELESS

### A. Rule 9 Does Not Apply

To begin, this case is largely not about misrepresentations. Sony's conduct is actionable regardless of fraud – it caused a product to be sold (the newer games) that damaged someone else's property (the plaintiff's and the class members' game consoles). Deceptive conduct need not be shown to recover.

Nonetheless, for the deception-related aspects of the claims, plaintiff's UCL and CLRA claims are "distinct from common law fraud." *In re Tobacco II*, 46 Cal. 4th at 312. "A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim … under the UCL." *Id.*; *Day v. AT&T Corp.*, 63 Cal. App. 325, 332 (1998). This distinction reflects the UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices. *In re Tobacco II*, 46 Cal. 4th at 312.

Even if Rule 9(b) is applied, the particularity requirement must be read in harmony with Rule 8's requirement of a "short and plain" statement of the claim. *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). Rule 9(b) only requires that allegations regarding the circumstances constituting the fraud be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged

---

8 Sanders *v. Apple, Inc.*, 672 F. Supp. 2d 978, 984 (N.D. Cal. 2009) and *Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 13187 (N.D. Cal. Feb. 10, 2011), cited by Sony, do not hold otherwise. In *Sanders* the court dismissed one plaintiff's claim for lack of standing because it stated that it purchased the product based on customer loyalty and not representations made by defendant, but found a second plaintiff had standing because he purchased the product based on representations made by defendant. 672 F. Supp. 2d at 984. *Baltazar* does not address Article III standing and only addresses reliance with respect to common law claims not alleged here.

BLOOD HURST & O'REARDON, LLP

so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (holding that plaintiff need only "set forth what is false or misleading about a statement, and why it is false").

Here, the FAC without question gives fair notice of the alleged misconduct including pictures of the misrepresentations at issue. Sony knows the conduct at issue and when it occurred. ¶¶17-21. The FAC also describes why Sony's conduct is likely to deceive the reasonable consumer – it's a facially false statement. ¶¶23-29; *See Chacanaca v. Quaker Oats Co.*, No. 10-0502, 2010 U.S. Dist. LEXIS 111981, at *39-*40 (N.D. Cal. Oct. 14, 2010) (finding Rule 9(b) satisfied where "plaintiffs have identified the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used").

To the extent Rule 9(b) even applies, plaintiff has met it.

## VII. PLAINTIFF HAS STATED A UCL CLAIM

### A. Plaintiff Has Standing Under the UCL

Standing under the UCL requires that the named plaintiff has suffered injury in fact and has "lost money or property as a result of" defendant's unfair business practices. Bus. & Prof. Code §17204. Under the recent California Supreme Court decision in *Kwikset,* plaintiff need only allege he "lost money or property" as a result of defendant's conduct, even if the product otherwise functioned. 51 Cal. 4th at 331 (finding that plaintiff need only allege "harm that arises from purchasing mislabeled products in reliance on the truth and accuracy of their labels").

Sony makes the patently ridiculous assertion that plaintiff has not alleged any facts that he "gave any money" to Sony. Def's Mem. at 19. This is not the standard, and it is incorrect. Plaintiff properly alleged he "lost money as a result of Sony's unfair and deceptive business practices." ¶11. Plaintiff further alleges he "purchased the first model PS3" and "purchased the Sony-authorized Call of Duty: Black Ops video game," from which Sony receives money.

*Id.* This is sufficient under *Kwikset*.

*Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), does not hold otherwise. There, the court held that plaintiffs could not recover for "expectancy" damages under the UCL based on a contract that was never awarded. *Id.* at 1149. Here, plaintiff does not seek "expectancy" damages but rather, actually purchased products that were marketed by Sony as being compatible when in reality they were not compatible but instead destructive to the PS3 when used together. ¶11. As a result, plaintiff's PS3 is no longer operable and thus, he lost money and property. *Id.*

Sony also argues that plaintiff lacks standing to seek the statutory remedy of injunctive relief because Sony no longer sells the "fat" PS3 models and the "slim" PS3 models currently being sold do not suffer from the same problem. Def's Mem at 20. But Sony still sells the new games for use on the "fat" PS3 models. As a result, plaintiff seeks injunctive relief to prohibit Sony from continuing to represent that these PS3 games are compatible with the "fat" PS3 consoles and corrective advertising to inform consumers about the problem with using the newer games with the older console.

**B. Actionable Basis for UCL Claim**

Additionally, Sony contends plaintiff has not alleged an actionable basis under the "unlawful" and "fraudulent" prongs of the UCL.[9] Def's Mem. at 20-21. Decisions granting motions to dismiss claims under the UCL are rare. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). This is because "California courts [] have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [motion to dismiss]." *Id.* (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007) and *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1472

[9] Under the "unfair" prong of the UCL, a business practice is actionable "if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell*, 142 Cal. App. 4th at 1473. The unfair prong is "intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 (2000). Sony completely ignores this broad standard, which is undoubtedly applicable to its conduct.

(2006)); *see also Committee on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983) (finding demurrer inappropriate in case where parents alleged deceptive advertising of sugar cereals).

"[T]he primary purpose of the unfair competition law ... is to protect the public from unscrupulous business practices." *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,* 4 Cal. App. 4th 963, 975 (1992); *In re Tobacco II*, 46 Cal. 4th at 312. The UCL imposes strict liability on anyone who violates its prohibitions and the "scope of the UCL is quite broad." *McKell*, 142 Cal. App. 4th at 1471; *see also Cortez*, 23 Cal. 4th at 181 ("[P]laintiff need not show that a UCL defendant intended to injure anyone through its unfair or unlawful conduct."). Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria ("unlawful," "unfair" or "fraudulent") to violate the UCL. *McKell*, 142 Cal. App. 4th at 1471.

"With respect to the unlawful prong, '[v]irtually any state, federal or local law can serve as the predicate for an action' under section 17200." *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002) (emphasis omitted). Sony contends plaintiff has not stated a claim under the "unlawful" prong because plaintiff's theories are not actionable under *Daugherty*. As explained above, Sony is wrong. *See supra*, §IV.

Sony finally admits misrepresentations are alleged but once again misstates plaintiff's claims and makes the convoluted argument that because the alleged misrepresentations do not relate to the "claimed defect," plaintiff cannot plead reliance and cannot demonstrate that a reasonable consumer is likely to be deceived under the "fraudulent" prong. Def's Mem. at 21. First, this case is not about a defect – it is about Sony marketing and selling video games for use on a gaming console that cause the gaming console to become inoperable. Second, as discussed above, plaintiff has pleaded reliance. *See supra* §V.

Third, a business practice is likely to deceive where "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508

(2003). The determination of whether a practice is likely to deceive is a "question of fact, requiring consideration and weighing of the evidence from both sides before it can be resolved." *McKell*, 142 Cal. App. 4th at 1472. Plaintiff properly alleges that members of the public are likely to be misled by Sony's false representations that all Sony-approved PS3 games are appropriate for use on the subject PS3 consoles. *See, e.g.*, ¶29.

Plaintiff has stated a claim under the UCL.

**VIII. SONY'S CLASS CERTIFICATION ARGUMENTS ARE PREMATURE**

Sony's contentions regarding plaintiff's class allegations are premature. *See Cholakyan v. Mercedes-Benz USA, LLC*, No. CV 10-05944 MMM (JCx), 2011 U.S. Dist. LEXIS 72584, *66-*70 (C.D. Cal. June 30, 2011) (finding motion to strike class allegations premature where no discovery had commenced and defendant had not yet filed an answer); *see also In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614-15 (N.D. Cal. 2007) ("the granting of motion to dismiss class allegations before discovery has commenced is rare"); *In re NVIDIA GPU Litig.*, 2009 U.S. Dist. LEXIS 108500 at *41 ("A determination of the ascertainability and manageability of the putative class in light of the class allegations is best addressed at the class certification stage."); *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 U.S. Dist. LEXIS 43592, *21-*22 (S.D. Cal. May 22, 2009) ("Even though the arguments of [the defendant] may ultimately prove persuasive, the court declines to address issues for class certification at the present time. Piece-meal resolution of issues related to the prerequisites for maintaining a class action do no serve the best interests of the court or parties.").

Even if considered on the merits, Sony's arguments regarding plaintiff's class certification allegations should be overruled. Sony first contends the class allegations should be stricken or dismissed because under *Dukes*, there are no questions of law or fact in common to the class. Def's Mem. at 21. Of course there are. The primary issue in the case is whether the newer Sony approved and authorized games are compatible with the "fat" PS3 gaming console. Sony claims that they are, and labels the games as such. Plaintiff claims they are not,

and the labels are wrong. These present not just common questions, but predominating common questions. Even Sony agrees discovery is needed to determine the universe of PS3 games that are not compatible with PS3 consoles and whether they are in fact not compatible. *See id.* at 22.

Moreover, *Dukes* helps plaintiff, not Sony. *Dukes* reaffirmed that the trial court has a duty to conduct an evidence-based "rigorous analysis" of the question of class certification. 131 S. Ct. at 2551. "Rule 23 does not set forth a mere pleading standard." *Id.*; *see also In re Wal-Mart Stores*, 505 F. Supp. 2d at 615 ("In the absence of any discovery or specific arguments related to class certification, the Court is not prepared to rule on the propriety of the class allegations and explicitly reserves such a ruling."); *Shein v. Canon U.S.A., Inc.*, No. CV-08-07323CASEX, 2009 U.S. Dist. LEXIS 94109, *34 (C.D. Cal. Sept. 22, 2009) ("The Court finds that these matters are more properly decided on a motion for class certification, after the parties have had an opportunity to conduct class discovery and develop a record.").

Citing *Sanders*, Sony also contends that proof of reliance by each class member is required for plaintiff's UCL and CLRA claims. Def's Mem. at 23. This is simply incorrect. *Sanders* is a breach of express warranty case – not a UCL or CLRA case. 672 F. Supp. 2d at 991 ("reliance *is* a necessary element of a claim for breach of express warranty"). And the case law is clear that reliance is not required. *See In re Tobacco II*, 46 Cal. 4th at 326 n.17; *Fireside Bank*, 40 Cal. 4th at 1090; *In re Steroid Home Prod.*, 2010 Cal. App. LEXIS 154 at *3; *Olivera*, 689 F. Supp. 2d at 1224.

Finally, Sony contends the class as defined should be stricken because it includes purchases for non-consumer purposes, people who received the PS3s as gifts and individuals whose PS3 experienced the "defect" after the warranty period. Def's Mem. at 23-24. The class is expressly defined as "persons who purchased," excludes anyone who bought for the purpose of resale, and does not include people who received the merchandise as a gift. ¶33. And as explained above, whether a consumer's PS3 broke outside the warranty period is irrelevant. *See supra* §IV.

## IX. CONCLUSION

For the foregoing reasons, Sony's motion to dismiss should be denied.[10]

Dated: August 22, 2011

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)

By: s/ *Timothy G. Blood*
TIMOTHY G. BLOOD

600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP
DAVID S. CASEY, JR. (60768)
FREDERICK SCHENK (86392)
GAYLE BLATT (122048)
110 Laurel Street
San Diego, CA 92101
Telephone: 619/238-1811
619/544-9232 (fax)
dcasey@cglaw.com
fschenk@cglaw.com
gblatt@cglaw.com

DAVID LIZERBRAM & ASSOCIATES
DAVID LIZERBRAM (222007)
2247 San Diego Avenue, Suite 235
San Diego, CA 92110
Telephone: 619/517-2272
619/393-0498 (fax)
david@lizerbramlaw.com

Attorneys for Plaintiff

[10] Sony asks the Court to dismiss plaintiff's complaint with prejudice because "Mr. Garcia has had several opportunities to amend his allegations to state viable claims, but has failed to do so." Def's Mem. at 24. Plaintiff amended the complaint once, primarily to seek damages under the CLRA, as is his right. *See* Cal. Civ. Code §1782. Nonetheless, should the motion be granted in whole or in part, plaintiff requests leave to amend.



BLOOD HURST & O'REARDON, LLP

CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed August 22, 2011.

s/ *Timothy G. Blood*

BLOOD HURST & O'REARDON, LLP
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O'REARDON, LLP